| | | |
|---|---|---|
| DONALD O. MACLACHLAN, et al., | ) | CASE NO. 1:15CV10001 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| A.W. CHESTERTON, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #81) of Defendant

American Optical Corporation for Summary Judgment.  For the following reasons, the

Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiffs Donald O. MacLachlan and Pat S. MacLachlan filed the captioned lawsuit

against numerous manufacturers claiming injury due to exposure to asbestos-containing

products.  The Complaint was filed originally in Cuyahoga County Common Pleas Court and

was placed on the inactive docket for non-malignant cases between 2006 and 2014.  Donald

MacLachlan was diagnosed with mesothelioma in 2014 and the case was re-activated.

At Plaintiff's deposition in May of 2015, he claimed exposure to a piece of military equipment manufactured by General Electric ("GE"), that is, a main propulsion steam turbine aboard the USS Kennedy, a United States Navy warship. GE raised the defense of acting under the direction and control of a federal officer or agency (Department of the Navy) in the manufacture of the marine turbines to which Plaintiff claimed exposure. Thus, the captioned case was properly removed to U.S. District Court under the federal officer removal statute, 28 U.S.C. § 1442.

As part of his work history, Plaintiff worked at Weirton Steel from 1971 until his retirement in 2008. His work in the blast furnace there necessitated the use of protective clothing to combat the extreme heat and to protect from the molten splash. In his preliminary product identification disclosure, Plaintiff stated that he wore American Optical clothing at some point at Weirton Steel.

At his depositions in September 2014 and May 2015, Plaintiff testified that as a cast house helper in the Weirton Steel blast furnace, he believed that he was exposed to asbestos via the thermal protective coats and gloves that he wore. Plaintiff worked as a cast house helper beginning approximately in 1979. In the May 2015 deposition, Plaintiff associated the protective coats he wore with Defendant American Optical.

Plaintiff recalled that his superintendent told him that American Optical "used to supply [their] cast house equipment," including "coats, mittens, and leggings, and hoods." When pressed as to which items of clothing contained asbestos, he responded: "The coat and mittens, I'm positive."

Plaintiff also remembered seeing the letters "AO" in large, black block letters "on the

back of the coat up there on the collar." He described the coats as aluminized with a blue/gray leather or suede band around the collar. Plaintiff testified that he wore the coat every day in the blast furnace. On average, Plaintiff wore the coat four times a day for at least 45 minutes at a time. Plaintiff remembered that the "gray, fuzzy" lining of the coat would clump off in half-inch balls. Watching an asbestos training video years later, Plaintiff testified that asbestos pipe insulation reminded him of the lining of the coats. Every couple of years at Weirton, Plaintiff would receive replacement coats from his employer.

Defendant American Optical admits that it manufactured both asbestos- and non-asbestos-containing protective wear. However, Defendant argues that Plaintiff's description does not match American Optical products nor identify asbestos-containing products. For example, Defendant's expert, Jeffrey O. Stull, President of International Personnel Protection, compared American Optical's clothing catalogs to Plaintiff's testimony and noted that American Optical's aluminized coats had a wool collar, not leather or suede. (Stull Affidavit, Exhibit D). Stull added that American Optical did not place its logo on the outside of the collar but had a tag on the inside of the back collar. *Id.* The materials in American Optical's protective coats were encapsulated so that loose asbestos would not be released under ordinary wearing conditions. *Id.* None of the materials in the linings looked like pipe insulation nor would flake into balls or clumps as Plaintiff described. *Id.*

Stull also noted that American Optical stopped making asbestos-containing clothing in 1976 and sold its protective clothing business to Racine Glove Company in 1977. *Id.* This would have been two years before Plaintiff was supplied aluminized asbestos protective coats at Weirton Steel.

In his Brief in Opposition, Plaintiff offers an affidavit he executed in 2018. (ECF DKT #88-2). He states that he was previously deposed over two eight-hour days and that he testified to the best of his ability at the time. *Id.* Plaintiff adds, upon reflection, that the approximate time period in which he worked in the Weirton Steel blast furnace actually included several occasions prior to 1977. *Id.* Plaintiff states that he was not presented any photographs or drawings of American Optical products at his depositions. Now, looking at the 1970 and 1973 American Optical Protective Clothing Catalogs, Plaintiff is able to identify the "very coat" worn during his employment at Weirton Steel. *Id*.

Defendant American Optical moves for judgment in its favor. Defendant argues that Plaintiffs lack colorable evidence of exposure to an asbestos-containing American Optical product. Defendant asserts that Donald MacLachlan's Affidavit should be excluded as subsequent contradictory testimony offered without reasonable explanation. In addition, Defendant submits that Plaintiffs' claim for punitive damages (Count VI) is not a separate claim for relief under Ohio law and that Plaintiffs' common law claims (Counts I, II and IV) are abrogated or prohibited by the Ohio Product Liability Act, R.C. § 2307.71, *et seq*.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must

either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Abrogation of common law claims</u>**

Plaintiffs do not submit any response to Defendant's argument that the Ohio Product Liability Act abrogates their Negligence, Strict Liability and Implied Warranty Claims.

The district court's power to grant dispositive motions because they are unopposed is firmly settled. *Demsey v. R.J. Reynolds Tobacco Co.*, 2005 WL 1917934, *2 (N.D.Ohio 2005); *Peacock v. Bayview Loan Serv.*, 2005 U.S. Dist. LEXIS 10276, *9-10 (N.D.Ohio 2005) (both citing to *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir.2000)). A party's "failure to respond" may be deemed a "confession" to the motion's merit. *Cacevic, id.* Any further review by this Court would be an inefficient use of the Court's limited resources. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), aff'd, 474 U.S. 140 (1985); *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Therefore, Defendant's Motion for Summary Judgment as to Plaintiffs' common law claims in Counts I, II and IV is granted.

**<u>Punitive Damages</u>**

Defendant asserts that Count VI of Plaintiffs' Complaint, titled "Punitive Damages", does not state a separate cause of action. *State ex rel. Board of State Teachers Retirement System of Ohio*, 113 Ohio St.3d 410 (2007). In their Brief in Opposition (ECF DKT #88 at 12), Plaintiffs admit that under Ohio law, "punitive damages are not a separate claim but merely an issue in the overall claim for damages."

The Court agrees that Count VI does not recite a cause of action, but rather a form of potential recoverable damages. Defendant's Motion is granted in this regard also.

**Product Liability - Asbestos exposure**

Defendant contends that Plaintiffs have failed to present evidence of exposure to an

asbestos-containing American Optical product that was a substantial factor in causing their

alleged injuries.  Defendant cites to R.C. § 2307.96 which requires the trier of fact to consider

certain factors in determining whether a particular defendant's asbestos product was a

substantial factor in causing a plaintiff's injury or loss:

(1) The manner in which the plaintiff was exposed to the defendant's asbestos;

(2) The proximity of the defendant's asbestos to the plaintiff when exposure

occurred;

(3) The frequency and length of the plaintiff's exposure to the defendant's

asbestos; and

(4) Any factors that mitigated or enhanced the plaintiff's exposure.

Plaintiffs counter that R.C. § 2307.96 became effective on September 2, 2004 and is

not applicable to their Complaint which was originally filed in 2003.  R.C. § 2307.96 (C)

provides: "This section applies only tort actions that allege any injury or loss to persons

resulting from exposure to asbestos and that are brought on or after the effective date of this

section."

Plaintiffs also contend that the R.C. §2307.96 framework is overly burdensome and

that the  appropriate standard for asbestos product liability actions is found in *Horton v.*

*Harwick Chemical Corporation*, 73 Ohio St.3d 679 (1995).  According to the *Horton* court:

"A plaintiff need not prove that he was exposed to a specific product on a regular basis over

some extended period of time in close proximity to where the plaintiff actually worked in

order to prove that the product was a substantial factor in causing his injury."  *Id*. at 686.

Although Defendant insists that the statute can apply because Plaintiffs' mesothelioma claims did not arise until 2014, both parties agree that to establish causation in a multi-defendant case like the one at bar, the burden rests with Plaintiffs to come forward with evidence of exposure to each individual Defendant's asbestos-containing product and that the exposure was a substantial factor in causing Plaintiffs' injury or loss.

In his deposition, Plaintiff Donald Maclachlan recalled wearing asbestos-containing safety clothing while working in the Weirton Steel Blast Furnace.  He testified that he was "positive" that the coat and mittens he was provided contained asbestos.  He also testified that his superintendent/supervisor told him that American Optical supplied the cast house equipment, such as coats, mittens, leggings and hoods.  He was required to wear the protective clothing on the job in the blast furnace at least four times a day.

Defendant American Optical admits that for a period of time up until 1976 or 1977, it manufactured asbestos-containing protective clothing.  In the affidavit submitted with Plaintiffs' Brief in Opposition, Donald MacLachlan swears that he worked in the Weirton blast furnace on several occasions prior to 1977, and states that he was able to visually identify the type of coat he wore in 1970 and 1973 American Optical catalogs which he had not seen prior to or during his depositions.

Defendant asserts that Plaintiff's "revisionist" affidavit contradicts his earlier deposition testimony without any reasonable explanation.  Therefore, Defendant asks the Court to strike the changed product identification testimony under the "sham affidavit" doctrine, which precludes a party from filing "an affidavit that contradicts his earlier sworn

testimony" after a summary judgment motion has been filed. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016); *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991).

Plaintiff Donald MacLachlan explains that he was deposed over two grueling days while suffering with the symptoms of mesothelioma. Nevertheless, he was able to recall that he was required by his blast furnace job to wear an aluminized American Optical coat. Dealing with ill health and intense questioning about his complete work history, including dates of employment, locations, job responsibilities and asbestos-containing products he saw, Plaintiff concedes that at his depositions he misstated the extent of the time frame he wore Defendant's protective coat in the Weirton Steel blast furnace. (ECF DKT #88-2). However, he adds that for purposes of his affidavit he was shown American Optical Protective Clothing Catalogs which he did not have the benefit of seeing at the time of his depositions. *Id.*

A party "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U. S. 795, 806 (1999).

In his subsequent affidavit, Plaintiff Donald Maclachlan materially alters the dates that he was exposed to Defendant's protective clothing, pushing the timeline back to before 1977. He states that he is now able to circle images in catalogs of American Optical protective coats similar to the ones he wore; but the examples he identifies have wool (not leather or suede) collars, no prominent logo on the back of the collars and may or may not be styles containing asbestos. Thus, the Court finds that the 2018 affidavit directly contradicts Plaintiff's prior

sworn deposition testimony.

However, that finding does not automatically mandate that the affidavit should be stricken. The Court must inquire whether the party opposing summary judgment has provided a persuasive justification for the contradiction. *Aerel, S.R.L. v. PCC Airfoils, LLC.*, 448 F.3d 899 908-09 (6th Cir. 2006). The Court must look into whether Plaintiff Donald MacLachlan had access to pertinent evidence at the time of his earlier testimony and also whether there was justifiable confusion, mistake or lapse in memory. *Samuels v. Allstate Property & Casualty Insurance Company*, 310 F.Supp.3d 847, 869-870 (E.D.Mich. 2018) (collecting cases).

The Court recognizes that these product liability cases, where an asbestos-related illness may not appear for decades, often involve extensive employment histories and recollection of multiple workplaces, job responsibilities and products used or simply observed by plaintiffs. Plaintiff Donald MacLachlan was asked about a job he held over thirty years earlier. He is now suffering with mesothelioma symptoms and somewhat advanced age. He was shown pictures of protective coats in an American Optical catalog which he did not see at the time of his depositions.

Thus, the Court determines that the contradictions in the supplemental affidavit can be reasonably explained by confusion, memory lapses and new pertinent evidence. Moreover, the Court concludes that the contradictory evidence should more appropriately be sorted out by the jury. These "variations" go to the weight and credibility of testimony and the Court declines to identify the testimonial differences as falsehoods rendering the subsequent affidavit a sham. *See Samuels*, 310 F.Supp.3d at 870.

Plaintiffs have presented sufficient evidence to create a jury question as to whether Plaintiff Donald MacLachlan was exposed to the asbestos-containing protective clothing manufactured by Defendant American Optical and whether that exposure was a substantial factor in causing Plaintiffs' injury and loss.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #81) of Defendant American Optical Corporation for Summary Judgment is granted in part and denied in part.

**IT IS SO ORDERED.**

**s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: March 12, 2019**